# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Aleksander B.,

                    Petitioner,

v.

Donald J. Trump, *in his official capacity as President of the United States*; Kristi Noem, *in her capacity as Secretary of the United States Department of Homeland Security*; Todd M. Lyons, *in his official capacity as Acting Director of the United States Immigration and Customs Enforcement*; Pamela Bondi, *in her official capacity as Attorney General of the United States*; David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*,

                    Respondents.

No. 26-cv-170 (KMM/DJF)

**ORDER**

---

       This matter is before the Court on Petitioner Aleksander B.'s petition for a writ of habeas corpus (Dkt. 1) and Respondents' Motion to Dismiss or Transfer (Dkt. 7). For the following reasons, Respondents' Motion is denied and the Petition is granted.

## BACKGROUND

       Petitioner Aleksander B. is a native of Russia. (Dkt. 1 ¶ 3.) He was lawfully admitted to the United States as a refugee on August 21, 2024. (*Id.* ¶¶ 3, 5, 49.) Petitioner has lived in the United States since then. (*Id.* ¶ 5.) On August 27, 2025, Petitioner filed an

I-485 Application for Adjustment of Status with U.S. Citizenship and Immigration Services. (*Id.* ¶ 50.) Petitioner "has not been arrested by the police or charged with any crime." (*Id.* ¶ 52; *id.* ¶ 3 ("He has neither violated the immigration statutes, nor any criminal statute."). There is no allegation or evidence in the record that Petitioner has been charged with removability under the laws of the United States. Nor is there any indication that the government has terminated his refugee status.

On January 9, 2026, Petitioner was arrested by Immigration and Customs Enforcement ("ICE") at Fort Snelling in Minnesota.[1] (Dkt. 1 ¶ 53.) At that point, Petitioner "essentially disappeared," leaving his family with "no idea [of] what happened to him." (Dkt. 12 at 5; *see* Dkt. 14 ¶¶ 2–4 (listing ways Petitioner's wife, Ksennia Blizniukova, attempted to locate Petitioner, including calling hospitals and calling 911 to obtain information on how to file a missing persons report, and, upon finding Petitioner's car with the keys left inside, stating Blizniukova concluded that "something very bad happened to him, like being kidnapped.").

The following morning, January 10, Petitioner called his father and stated that he had been arrested the previous day and was being detained in St. Paul. (Dkt. 14 ¶ 3.) At around noon, Petitioner's family contacted Attorney Viorel Ureke to serve as Petitioner's counsel, who then checked the ICE Detainee Locator which indicated that Petitioner was

---

[1] The parties dispute what day Petitioner was arrested by ICE, with Petitioner alleging it was January 9 and Respondents averring that it was January 10. As this matter comes before the Court on a motion to dismiss, the Court accepts Petitioner's allegations as true for purposes of this Motion. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But even should Defendant be correct, the difference does not alter the Court's analysis or conclusion.

still in St. Paul. (Dkt. 13 ¶ 2.) That same afternoon, Ureke filed a Notice of Appearance with ICE online and emailed its St. Paul Office with additional details and noting the inability to identify Petitioner's current location. (Dkt. 13 ¶ 3; Dkt. 13-2 at 1.) The instant Petition was then in this Court on January 11, 2026. (*See* Dkt. 1.) At the time of this its filing, Petitioner's "last known whereabouts" were Fort Snelling. (Dkt. 1 ¶ 5.)

Unbeknownst to Petitioner's family and counsel, Respondents had transferred Petitioner on January 10, 2026 to the Mongomery Processing Center in Conroe, Texas. (Dkt. 8 at 1.) "As of January 11, 2026, [Petitioner] was housed in Conroe, Texas." (Dkt. 11 ¶ 9.) Petitioner was again transferred on January 13 to El Paso, Texas, where, at the time of Respondents' last filings, Petitioner was being detained. (Dkt. 11 ¶ 10.) It was not until that day that Petitioner's counsel and family learned through the ICE Detainee Locator that Petitioner was being held outside of Minnesota. (*See* Dkt. 13 ¶ 4; Dkt. 14 ¶ 4.) ICE never responded to Ureke's email. (Dkt. 13 ¶ 3.) When Ureke was able to reach an ICE officer in El Paso by phone on January 20, the officer told Ureke that Petitioner had been transferred back to Houston, Texas on January 18, despite the ICE Detainee Locator showing no such update. (Dkt. 13 ¶ 6.) As of January 20, Petitioner's counsel nor family have had any communication with Petitioner. (Dkt. 13 ¶¶ 4–6; Dkt. 14 ¶ 4.)

On January 17, Respondents filed both their Response to the Petition (Dkt. 10), the instant Motion (Dkt. 7), and a declaration from Xiong Lee (Dkt. 11). Petitioner filed his Response to the Motion and additional declarations on January 20. (Dkts. 12–16.)

**DISCUSSION**

**A.    Motion to Dismiss**

Respondents move to dismiss this Petition for lack of subject matter jurisdiction. (Dkt. 8 at 1–2.) Respondents contend that this Court lacks such jurisdiction because the Petition was filed in this District after Petitioner had been transferred to Texas. (*Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004).) In the alternative to dismissal, Respondents seek an order transferring this matter to the United States District Court for the Western District of Texas. (*Id.* at 3.)

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). That power "includes jurisdiction to hear habeas challenges to immigration-related detention." *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025). The Supreme Court has stated that "the general rule" for habeas petitions is that "jurisdiction lies in only one district: the district of confinement." *Padilla*, 542 U.S. at 443. But the high court has also recognized that when "a prisoner is held in an undisclosed location by an unknown custodian, it is impossible to apply the . . . district of confinement rules." *Id.* at 450 n.18. In those instances, Justice Kennedy, joined by Justice O'Connor, "acknowledge[d] an exception" to the district of confinement rule: "if there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention . . . habeas jurisdiction would be in the district court from

4

whose territory the petitioner had been removed." *Padilla*, 542 U.S. at 454 (Kennedy, J. concurring).[2]

While a Supreme Court majority has not formally accepted such an exception, courts nationwide have recognized its existence. *See Ozturk v. Trump*, 777 F. Supp. 3d 26, 37–38 (D. Mass. 2025) (collecting cases); *Suri v. Trump*, 785 F. Supp. 3d 128, 144–45 (E.D. Va. 2025) (recognizing and applying the exception), *aff'd*, No. 25-1560, 2025 WL 1806692, at *4 (4th Cir. July 1, 2025) (same) (noting the Fourth Circuit's previous application of the exception in *United States v. Moussaoui*, 382 F.3d 453 (4th Cir. 2004)); *Tacuri ex rel. Guanoluisa v. Francis*, No. 25-CV-07012 (JAV), 2025 WL 3459377, at *3 (S.D.N.Y. Dec. 2, 2025) (recognizing and applying the exception); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 392 (D.N.J. 2025) (same). Courts in this District have as well. *See E.E. v. Bondi*, No. 26-cv-00314 (JWB/DTS), Dkt. 7 at 3–5 (D. Minn. Jan. 17, 2026); *Ermatov v. Bondi*, No. 26-cv-313 (JWB/DTS), Dkt. 7 at 3-5 (D. Minn. Jan. 17, 2026); *Ermatov v. Bondi*, No. 26-cv-312 (JWB/DTS), Dkt. 8 at 3–5 (D. Minn. Jan. 17, 2026); *Palma v. Bondi*, No. 26-cv-196 (NEB/DTS), Dkt. 8 at 2 (D. Minn. Jan. 17, 2026) (granting motion to transfer because Petitioner did not respond but recognizing the exception); *Lah v. Trump*, No. 26-cv-00171 (MJD/SGE), Dkt. 11 at 6–11 (report and recommendation); *Xia v. King*, No. 24-cv-2000 (JRT/DLM), 2025 WL 240792, at *2 (D.

---

[2] This exception rhymes with another, formally adopted exception that states "when the Government moves a habeas petitioner after [he] properly files a petition naming [he] immediate custodian, the District Court retains jurisdiction[.]" *Padilla*, 542 U.S. at 441 (citing *Ex parte Endo*, 323 U.S. 283 (1944)). But since Petitioner did not file his Petition in this Court before his transfer to Texas, this exception does not apply here.

Minn. Jan. 17, 2025). In applying this carve out, at least one court has articulated that
"[a]n exception to the district of confinement rule must apply when, after reasonably
diligent effort, the district in which the petitioner was confined could not have been
determined." *Suri*, 785 F. Supp. 3d at 143–44, *aff'd*, 2025 WL 1806692, at *5 ("Under
those circumstances, no "diligent attorney could have known that [the petitioner] was
[moved out of the district] at the time [his attorney] filed the petition.""); *see Francis*,
2025 WL 3459377, at *4 (applying the standard from *Suri*).

      Here, Petitioner's case falls within the exception envisioned by Justice Kennedy
and applied by our sister courts. Petitioner was arrested by ICE without notice on January
9 at Fort Snelling and, because no communication was made that day on his behalf, left
his family to conclude that he had gone missing altogether. When Petitioner was able to
communicate with his father the following day, he relayed that he was being detained by
ICE in St. Paul. Then, for three days, Petitioner's family and counsel heard nothing
whatsoever about Petitioner's whereabouts, despite Ureke's attempts to communicate
with ICE. During that time, the instant Petition was filed on January 11. Only on January
13 were Ureke and Petitioner's family made aware of Petitioner's new location when the
ICE Detainee Locator was updated. In their filings here, Respondents make no attempt to
rebut these allegations or assert that information on Petitioner's location was otherwise
available. (Dkt. 10 at 1 ("Respondents do not dispute the salient facts alleged in the
Petition.").) In total, this record is clear that Respondents were "not forthcoming with
respect to . . . [Petitioner's] place of detention," *Padilla*, 542 U.S. at 454 (Kennedy, J.
concurring), and despite a "reasonably diligent effort" to find such information on

Petitioner's behalf, no such discovery was made. *Suri*, 785 F. Supp. 3d at 143–44. An exception to the district of confinement rule applies here and leaves the Court with jurisdiction to hear the Petition.

The Court finds support for this conclusion from the other courts who have recently applied this exception in strikingly similar circumstances. *See Suri*, 785 F. Supp. at 144 (concluding that the case "demand[ed] an exception to the district of confinement rule" where "Petitioner reside[d] in this District, he was arrested in this District, and he was originally detained in this District," "[t]he last time Petitioner was permitted to speak to his wife, the only information he had was that he would be detained in this District," "Petitioner's counsel worked diligently in less than twenty hours and filed the petition in this District based on the only information that was available to him—that his client was detained in this District," the petitioner's notice to appear "did not reference [another district], nor did the ICE Online Detainee Locator provide information about Petitioner's whereabouts until after the petition was filed," and "[a]t no point after entering his appearance did Petitioner's counsel receive any notification that Petitioner had been transferred"), *aff'd*, 2025 WL 1806692, at \*5 ("This case is a prime example for why the [district of confinement] exception exists."); *Francis*, 2025 WL 3459377, at \*4 (concluding that the district of confinement exception applied where "ICE officials arrested Petitioner in New York on August 21, 2025, and flew him to Texas on August 22, 2025," the petition "was filed within one day of Petitioner's arrest [and] represent[ed] that Petitioner continues to be detained [in New York]," "neither Petitioner's next friend nor anyone else seeking to act on Petitioner's behalf could have known that [the

petitioner was not in New York] at the time of filing," and the respondents did not "represent that the information about where ICE officials were planning to transport Petitioner had been made available through ICE's online detainee locator or otherwise") (cleaned up); *see also Munoz-Saucedo*, 789 F. Supp. 3d at 392–93; *E.E. v. Bondi*, Dkt. 7 at 3–5; *Ermatov v. Bondi*, Dkt. 7 at 3-5; *Ermatov v. Bondi*, Dkt. 8 at 3–5; *Lah v. Trump*, Dkt. 11 at 6–11.

Because an exception to the district of confinement rule applies, the Court retains subject matter jurisdiction over the Petition. And because this District is the proper place to hear the Petition, Respondents' alternative request to transfer it to the Western District of Texas is denied.

**B.    Petition**

In the Petition itself, Aleksander B. requests an order declaring his detention unlawful and requiring his immediate release from custody. (Dkt. 1 at 14.) Respondents argue that the Petition should be denied and the Court should find that he is lawfully detained under 8 U.S.C. § 1159(a)(1)(C). The Court has recently granted a similar habeas petition in *Abdi F. W. v. Trump*, No. 26-cv-208 (KMM/SGE), Dkt. 7 (D. Minn. Jan. 21, 2026) (Order). Just as the Court found in *Abdi F. W.*, here, Petitioner has shown that he is entitled to a writ of habeas corpus.

A court can issue a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The burden is on the petitioner to prove illegal detention by a preponderance of the evidence." *Jose J.O.E.*, 797 F. Supp. 3d at 965. This case concerns the government's power to detain

8

a person who has been admitted into the United States as a "refugee,"[3] which requires the Court to consider the unique status of refugees within our complex network of immigration laws. "Admission as a refugee is a distinct lawful immigration status." *Liban G. v. Noem*, No. 26-cv-0301 (SRN/ECW), 2026 WL 125689, at *2 (D. Minn. Jan. 16, 2026). Under the Immigration and Nationality Act (INA), refugees may be admitted to the United States following certain procedures. *See* 8 U.S.C. § 1157; *Liban G.*, 2026 WL 125689, at *2 (citing USCIS, *Refugees*, https://www.uscis.gov/humanitarian/refugees-and-asylum/refugees). Refugees may be conditionally admitted to the United States without presenting a visa upon arrival. *See Azarmanesh v. Bondi*, No. 23-cv-05210-LJC, 2025 WL 965955, at *12 (N.D. Cal. Mar. 31, 2025).

Those who have obtained conditional status as refugees are deemed to have been "admitted." *In re D-K-*, 25 I. & N. Dec. 761, 769 (B.I.A. 2012) ("[W]e conclude that under the language of the [INA] and regulations, and also in view of the context and structure of the provisions at issue, an alien admitted to the United States as a refugee has been 'admitted' for purposes of section 101(a)(13)(A) of the Act."). This means that a refugee's conditional admission can result in two "admissions" to the United States—the original conditional admission, and a later, longer-lasting admission if the refugee is adjusted to LPR status. *Id.* at 768 (stating that "a refugee who ultimately becomes a lawful permanent resident will have been 'admitted' twice—first, upon conditional

---

[3] The Immigration and Nationality Act sets forth a specific definition of "refugee." 8 U.S.C. § 1101(a)(42).

admission under section 207 of the Act, and second, upon reinspection and adjustment to permanent resident status under section 209(a) of the Act[.]").

Moreover, admission as a refugee places limitations on the government's ability to initiate removal proceedings. *See id.* at 765, 769 (holding that, although removal proceedings may be initiated against a refugee whose refugee status has not been terminated, any charges of removability against such a refugee "must be based on the grounds of deportability under section 237 of the [INA]"). Under the law, a refugee's failure to obtain adjustment to LPR status by itself is not grounds for removal.

With these background principles in mind, the Court turns to the statute that Respondents argue gives them the authority to detain Petitioner—8 U.S.C. § 1159. However, Respondents point to no case law that supports their interpretation of § 1159 as authorizing continued detention of Petitioner.[4] That provision establishes a procedure for refugees to seek adjustment to LPR status after having been physically present in the United States for one year. Under § 1159, a refugee who has been admitted under § 1157, and whose admission has not been terminated, but who has not yet been adjusted to LPR status, "shall, at the end of such year period, return or be returned to the custody of the [DHS] for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 1225, 1229a, and 1231 of this title." 8

---

[4] Respondents cite only *Omanovic v. Crawford*, No. CV 06-0208-PHX, 2006 WL 2256630 (D. Ariz. Aug. 7, 2006). But *Omanovic* involved a petitioner whose application for adjustment of status had been denied due to the petitioner's criminal convictions, and the government had initiated removal proceedings against the petitioner charging him with removability due to the denial and his prior felonies. *Id.* at *3–4. Neither of those circumstances are present in Petitioner's case.

U.S.C. § 1159(a)(1); *see also* 8 C.F.R. § 209.1(a)(1). Thus, while § 1159(a) provides for a refugee's return to the custody of DHS, it does so only (1) to allow the government to inspect and examine the refugee for admission; and (2) subject to §§ 1225, 1229a, and 1231.

The statute's plain text and the applicable regulations contemplate a refugee's "return" to the "custody" of DHS for a limited time to serve a specified purpose—inspection and examination. *E.E. v. Bondi*, Dkt. 7 at 7 ("The statute . . . permits custody for a specific and limited function: to allow DHS to conduct the inspection necessary to adjudicate adjustment of status under § 1159(a)(2)."); *see also* 8 C.F.R. § 209.1(a)(1) (requiring every refugee to apply "one year after entry in order for USCIS to determine his or her admissibility under [8 U.S.C. § 1182]"). On review, if there are any applicable grounds for removal, "ICE . . . may charge a refugee with removability . . . even if the individual's refugee status has not been terminated," and "USCIS may place the individual in removal proceedings charging applicable grounds of inadmissibility[.]" Policy Memorandum, U.S. Customs and Immigration Enforcement, Requests for Evidence and Notices of Intent to Deny, PM-11039.1, at 2 (May 10, 2010) ("2010 DHS Guidance"). "Accordingly, upon taking an unadjusted refugee into custody based upon a reasonable belief that he or she is removable, the [ICE Office of Detention and Removal Operations ("DRO")] first must finalize its determination whether to place the individual in removal proceedings . . . and, if so, whether to continue detention." *Id.*

The text of § 1159(a) further makes apparent that continued detention of a refugee following "inspection and examination for admission" under § 1159(a) must flow from

§§ 1225, 1229a, and 1231. The Court finds that the record does not support Petitioner's continued detention under any of these provisions, and Respondents do not point to any of them to justify such continued detention. First, the mandatory-detention provisions of § 1225 only apply to certain arriving aliens who are inadmissible, 8 U.S.C. § 1225(b)(1), or who are deemed "applicant[s] for admission," *id.* § 1225(b)(2)(A). *See also Belsai D.S. v. Bondi*, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *5–7 (D. Minn. Oct. 1, 2025) (distinguishing between detention under §§ 1225(b)(2) and 1226(a)). Section 1225 cannot justify Petitioner's detention because Petitioner was conditionally admitted to the United States as a refugee in August 2024, and, therefore, his entry into the country is deemed an "admission" under the INA. *See* 8 U.S.C. § 1101(a)(13)(A); *In re D-K-*, 25 I. & N. at 769. Nothing before the Court suggests that Petitioner falls into either category that is subject to mandatory detention under § 1225(b)(1) or 1225(b)(2).

Likewise, § 1231 cannot justify Petitioner's continued detention because the government has not shown that he is subject to a final removal order. Section 1231 mandates detention of an alien who has been ordered removed from the United States during the 90-day "removal period," which usually begins on the date that a removal order becomes administratively final. *See* 8 U.S.C. § 1231(a)(1)(A)–(B), (a)(2)(A). It also authorizes detention beyond the 90-day removal period when DHS determines that the person is "a risk to the community or unlikely to comply with the order of removal." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (citing 8 U.S.C. § 1231(a)(6)). Here, § 1231 is entirely inapplicable because, according to the record, Petitioner has not been ordered removed from the United States.

Lastly, § 1229a, which governs removal proceedings, cannot justify Petitioner's continued detention because there is nothing before the Court suggesting that the government has initiated removal proceedings against him. Section 1229a authorizes immigration judges presiding over removal proceedings to decide whether an alien is inadmissible or deportable. 8 U.S.C. § 1229a(a)(1). To initiate such proceedings, the alien must be provided written notice of, among other things, the nature of the proceeding and the alleged basis for seeking removal. 8 U.S.C. § 1229(a)(1)–(2). "While removal proceedings are in progress, most aliens may be released on bond or paroled." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1226(a)(2), (c) (1994 ed., Supp. V)). Detention during the pendency of removal proceedings may also be mandatory in certain circumstances that are not applicable to Petitioner, such as when the person has been convicted of serious crimes. *See* 8 U.S.C. § 1226(c). But here, where nothing before the Court suggests that Petitioner has been placed in removal proceedings, § 1229a is irrelevant and does not justify his continued detention.

Instead, it appears that Respondents consider Petitioner's detention an interim status as he awaits a determination on his LPR application. Respondents argue that the Court should deny Petitioner's habeas petition because his status is "preliminary," and his "inspection will occur in due course." (Dkt. 10 at 3.) But again, even had he not already applied to adjust his status, a failure to apply for "adjustment of status under [§ 1159] is not a sufficient ground to place [refugees] in removal proceedings, and therefore not a proper basis for detaining them." 2010 DHS Guidance at 2. And "except in case of emergency or other extraordinary circumstances, upon the arrest of an unadjusted refugee

upon reasonable belief of removability," ICE must make a prompt determination

"whether to release the individual or issue a Notice to Appear (NTA)" that "indicat[es]

the removal charge(s) applicable to the alien." *Id.* (stating that the ICE DRO Field Office

must make such a determination within "48 hours after the arrest").[5] Respondents cannot

justify Petitioner's continued detention through an open-ended assurance that they will

get around to conducting the inspection and examination required by § 1159(a), which

presents their only identified basis for continued detention. *See Corina E. v. Bondi*,

No. 26-cv-313 (JWB/DTS), Dkt. 7 at 8 (D. Minn. Jan. 17, 2026) ("Respondents'

reassurances that Petitioner's detention 'is not indefinite' and that her 'inspection will

occur in due course' also cannot justify detention."); *E.E. v. Bondi*, Dkt. 7 at 7 (same).

   In sum, the Court concludes that § 1159(a) does not justify Petitioner's continued

detention because he is not detained in accordance with §§ 1225, 1229a, or 1231.

Therefore, the Court finds that Petitioner has met his burden to show that he is in custody

in violation of the laws of the United States. 28 U.S.C. § 2241(c)(3). As courts within this

district have recognized, when there is no valid statutory basis for detention, release is

---

[5] Petitioner was arrested by ICE on January 9, 2026. By January 17, 2026, Respondents had not conducted the inspection and examination required by § 1159 and represented only that it will occur within an undefined period. This exceeds the 2010 DHS Guidance document, which provides a 48-hour timeline for an inspection and examination. *See* 2010 DHS Guidance at 3 ("If a determination to place an unadjusted refugee in removal proceedings has not been made within the initial 48-hour period discussed above, the DRO Field Office should release the alien with a reminder that the INA imposes an obligation upon him or her to apply for adjustment of status under section 209(A) and to provide DHS with updated address information[.]"). As of today, Respondents have had almost two weeks to conduct the required examination, and they do not claim to have done so.

both "an available and appropriate remedy." *Ahmed M. v. Bondi*, No. 25-cv-4711 (ECT/SGE), 2026 WL 25627, at *3 (D. Minn. Jan. 5, 2026) (citing cases). Here, the Court finds that Respondents must promptly complete Petitioner's inspection and examination, failing which, they must release him. *See Corina E. v. Bondi*, Dkt. 7 at 9 (finding that "conditional relief" was appropriate in a case involving continued detention under § 1159(a)).[6]

## ORDER

For the reasons stated above, and based on the entire record, **IT IS HEREBY ORDERED THAT**

1. Petitioner Aleksander B.'s Petition for Writ of Habeas Corpus is **GRANTED in part** as set forth herein.

2. Respondents shall, **within three days of this Order**, either:

    a. Complete inspection and examination of Petitioner Aleksander B. pursuant to 8 U.S.C. § 1159(a), and file a notice confirming that inspection has been completed, identifying the outcome, and stating whether Respondents contend that continued detention is authorized on a specified lawful basis; or

    b. Immediately release Petitioner from custody **in Minnesota**, and file a notice confirming the date, time, and location of release.

**Let Judgment be entered accordingly.**

Dated: January 22, 2026               s/ *Katherine Menendez*_____
                                      Katherine Menendez
                                      United States District Judge

---

[6] Petitioner raises an additional and important argument in his Reply that 8 U.S.C. § 1159 does not authorize detention at all. (Dkt. 17 at 2–18.) Because relief has been granted on other grounds, the Court declines to address that argument at this time.